AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

*FILED*
*UNITED STATES DISTRICT COURT*
*ALBUQUERQUE, NEW MEXICO*

*AUG 19 2020*

*MITCHELL R. ELFERS*
*CLERK*

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>THE CELLULAR TELEPHONE ASSIGNED CALL<br>NUMBER (505) 569-3966 | )<br>)<br>)<br>)<br>)<br>) | Case No. 20-MR-1219 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Distribution of, and possession with intent to distribute, controlled substances |
| 21 U.S.C. § 846 | Conspiracy |

The application is based on these facts:

The affidavit of Special Agent Gillian Polinko is incorporated herein by reference. AUSA Peter J. Eicker has approved this search warrant.

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of _____ days *(give exact ending date if more than 30 days:*  12/17/2020  *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Gillian Polinko
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_ telephonically sworn and electronically signed _ *(specify reliable electronic means)*.

Date:  8/19/2020

City and state:  Albuquerque, New Mexico

_____
*Judge's signature*

Steven C. Yarbrough, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (505) 569-3966 | Case No. _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Gillian M. Polinko, Special Agent of the Drug Enforcement Administration (DEA),

being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant under Federal

Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location

of the cellular telephone assigned telephone number (505) 569-3966 ("**Montoya Phone 1**"), which

is subscribed to Mikayla Montoya, at 915 Old Mill Drive NW, Albuquerque, New Mexico

("NM"), whose service provider is T-Mobile, a wireless telephone service provider with

headquarters at 4 Sylvan Way, Parsippany, New Jersey.

2.      The information to be searched is described in the following paragraphs and in

Attachment A. This affidavit is made in support of an application for a search warrant under 18

U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 to require T-MOBILE to

disclose to the government the information further described in Section I of Attachment B. Upon

receipt of the information described in Section I of Attachment B, government-authorized persons

will review the information to locate items described in Section II of Attachment B.

3.      Because this warrant seeks the prospective collection of information, including

cell-site location information, that may fall within the statutory definitions of information

1

collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the government has obtained a separate order that complies with the requirements of the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The Court authorized an order to install and use pen register and trap and trace devices related to **Montoya Phone 1** in 20-MR-1184.

4.      I am a Special Agent with the United States Drug Enforcement Administration ("DEA"), and have been since April 2019. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), and I am empowered by law to conduct investigations and to make arrests for criminal offenses, to include those enumerated in 18 U.S.C. § 2516.

5.      I graduated from the DEA Training Academy in Quantico, Virginia, after receiving approximately 16 weeks of specialized narcotics related training. While at the DEA Training Academy I became familiar with how controlled substances are consumed, manufactured, packaged, marketed, and distributed. I received training on surveillance and counter-surveillance operations, undercover operations, confidential source operations, criminal law, and investigations involving federal electronic surveillance statutes, to include Title III wiretaps, drug identification, search warrant executions, and vehicle stops.

6.      My experience as a Special Agent includes, but is not limited to, conducting surveillance, interviewing witnesses, writing affidavits for and executing search and seizure warrants, debriefing defendants and confidential sources and working with undercover agents and informants.  I have received training and have experience in the investigation of violations of the federal drug and money laundering laws, including the offenses listed below.  As a result, I am familiar with matters including, but not limited to, the means and methods used by drug traffickers and drug trafficking organizations to purchase, transport, store, and distribute illegal drugs and to

hide profits generated from those transactions. I also have experience in analyzing and interpreting drug codes and cryptic dialogues used by drug traffickers. I have spoken to other law enforcement officers with similar experience.

7.     This case is being investigated by the DEA. I have personally participated in the investigation. I make this affidavit based on my participation in the investigation, and based on reports and information made available to me by other agents and Task Force Officers ("TFOs"), as well as other law enforcement authorities. This affidavit is intended to show that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge or surrounding facts pertaining to this matter.

8.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. §§ 841 and 846 have been committed, are being committed, and will be committed by Eustacio Montoya and his co-conspirators to facilitate drug trafficking activities. There is also probable cause to believe that the location information of **Montoya Phone 1**, described in Attachment B, will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses, sources of supply, and stash house locations used by Montoya and others.

9.     The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.     The DEA is currently conducting an investigation of Eustacio Montoya ("Montoya") and his drug trafficking activities regarding violations of 21 U.S.C. §§ 841 and 846.

This investigation targets the Eustacio Montoya poly-drug trafficking organization ("Montoya DTO"), operating in Albuquerque, NM. During the course of this investigation, agents have obtained evidence of the drug conspiracy through reliable confidential source ("CS") statements, multiple CS and undercover ("UC") controlled purchases, surveillance, toll analysis, and other investigative techniques.

11.     In September 2018, DEA agents from the Albuquerque District Office assisted DEA agents from El Paso, Texas with a controlled delivery of approximately three (3) kilograms cocaine in Albuquerque, NM. The cooperating defendant ("CD") was to meet the recipient of the cocaine at a public venue in northwest Albuquerque, NM. The CD who assisted in the buy/bust operation informed agents that the cocaine had recently crossed into the United States via the El Paso, TX Port of Entry. Once surveillance was established at the meet location, agents observed a silver sport utility vehicle ("SUV") arrive and briefly meet with the CD.  The SUV then departed away with surveillance units following behind it. A short time later, surveillance units attempted to initiate a traffic stop, utilizing emergency red/blue lights and sirens, and observed the driver of the SUV throw a white bag and packages from the driver's side window of the vehicle. These objects were later identified as the three kilograms of cocaine that were originally given to the CD in order to complete the controlled delivery. Agents initiated a stop on the SUV and the driver was taken into custody by DEA agents. Through the course of the investigation, agents gained information indicating that the three (3) kilograms of were destined for Montoya and that Montoya lived in Albuquerque, NM.  Agents queried Montoya in law enforcement databases and discovered the following: Montoya's criminal history was extensive with multiple arrests for drugs and aggravated assault.

12.     In September 2019, a CS[1] provided information to agents regarding the Montoya

DTO. The CS stated that the Montoya DTO distributes large quantities of heroin,

methamphetamine, cocaine, and suspected fentanyl pills in Albuquerque, NM. Further, the CS

stated Arturo Ruiz ("Ruiz") is considered Montoya's right-hand man and is a poly-drug

trafficker for the Montoya DTO. Since September 2019, agents have made five controlled

purchases of heroin and have also successfully introduced a UC to Ruiz. The latest CS controlled

purchase occurred in early August 2020 when the CS purchased over 400 grams of heroin from

Ruiz. Additionally, agents believe they have observed Montoya meeting Ruiz on four occasions

prior to and/or after Ruiz selling the CS heroin, including the most recent controlled purchase in

August 2020. Agents believe the purpose of these meetings was to supply Ruiz with the drugs

that Ruiz distributes, or to collect drug proceeds that Ruiz has obtained from selling drugs.

### Identification of Montoya Phone 1

13.     Like almost everyone in today's society, drug trafficker's primary method of

communication is through cellular telephones. Drug traffickers use cellular phones to coordinate

with sources of supply, customers, associates, and co-conspirators. Cellular telephone are

important tools used by drug traffickers to facilitate their activities. Based on my training and

experience, I know it is common for drug traffickers to make use of multiple phones at one time.

This is done in an effort to avoid law enforcement detection. To further this effort, drug

traffickers will often make use of a phone for a short period of time, e.g. 30 days, and then

activate a new phone that has a new phone number. Additionally, drug traffickers will often use

prepaid phones that do not require established accounts or verified personal information.

---

[1] This CS has been vetted by DEA. This CS has provided trustworthy information that has been corroborated by
DEA agents. This CS has never been found to be untruthful with agents and continues to provide reliable and
accurate information.

14.     In late-2019, agents identified telephone number (505) 569-3966 ("**Montoya Phone 1**"). **Montoya Phone 1** is a T-Mobile phone activated on April 13, 2018, and is currently still active. **Montoya Phone 1** is subscribed to Mikayla Montoya, whom agents believe is Montoya's teenage daughter, with a listed address of 915 Old Mill Drive NW, Albuquerque, NM. Based on tolls analysis and Grand Jury subpoena documents, agents believe Montoya is utilizing (505) 569-3966. In one document obtained pursuant to a subpoena, Montoya listed **Montoya Phone 1** as his work phone on a membership application with Mountain American Credit Union when applying for a vehicle loan in July 2019. Through toll analysis, agents have found **Montoya Phone 1** to be in contact with a phone number known to be utilized by Ruiz.[2] Over a period of time from January 8, 2020, to July 28, 2020, **Montoya Phone 1** and Ruiz were in contact 93 times.

15.     Toll analysis has also shown **Montoya Phone 1** to be in contact with a phone agents believe is utilized by Rudolph D. Archuleta. Over a period of time from January 2, 2020, to August 11, 2020, **Montoya Phone 1** was in contact with a phone subscribed to A2Z Construction, with a listed address of 1016 Solar Road NW, Albuquerque, NM, 401 times. Based on tolls analysis and open source information, this telephone number is believed to be used by Rudolph D. Archuleta. Archuleta is listed as the owner of A2Z Construction with an address of 533 Foothill Drive SW, Albuquerque, NM 87105. Additionally, per Archuleta's Facebook profile page, Archuleta lists A2Z Construction as his place of employment. Archuleta's Facebook page also displays a video featuring Ruiz doing what appears to be roofing work for A2Z Construction. Archuleta has also been mentioned in various DEA investigations

---

[2] Agents believe this phone number is used by Ruiz because it is the number agents have observed the CS dial to contact Ruiz and negotiate the drug transactions for four (4) controlled purchases with Ruiz.

dating back to 2004 for drug trafficking involving heroin, methamphetamine and cocaine.

Archuleta has an extensive criminal history dating back to 1995 for crimes such as drug

trafficking, carrying a firearm in relation to drug trafficking, resisting arrest, eluding an officer,

aggravated assault, and aggravated battery. Although agents have not solidified the relationship

between Archuleta and Montoya, based on Archuleta's criminal history, and his connection to

both Montoya and Ruiz, agents believe Archuleta is a member of the Montoya DTO, and his

contacts with **Montoya Phone 1** represent communications over **Montoya Phone 1** that

facilitate the DTO's operation.

      16.     Based on the above-information, including toll analysis, reliable CS statements,

previous cellular phone ping data collected from **Montoya Phone 1**,[3] and the investigation to

date, agents believe **Montoya Phone 1** is continuing to be used by Montoya to facilitate his drug

trafficking activities, which are also described in more detail below.

### January 2020 CS Controlled Buy

      17.     In January 2020, agents conducted a controlled purchase of over 20 grams of

heroin from Ruiz, utilizing the CS. Prior to the controlled purchase between Ruiz and the CS,

agents observed a white Chevy Aveo, bearing NM license plate JMR171,[4] meet with Ruiz just

moments before the CS arrived to the meet location. The white Chevy Aveo departed from the

area prior to the CS arriving. Agents were unable to identify the driver of the Aveo at that time.

After the controlled buy, agents took custody of the heroin from the CS and surveillance was

---

[3] On July 13, 2020, the Honorable United States Magistrate Judge John F. Robbenhaar signed a search warrant authorizing the receipt of cell phone location pings for cellular phone assigned phone number (505) 569-3966 (**Montoya Phone 1**). This authorization is valid for a period of 30 days. Agents stopped receiving cell phone location pings for **Montoya Phone 1** on August 13, 2020.

[4] According to NM Department of Motor Vehicles ("DMV"), plate JMR171 is registered to Jonathan and Ernestine Dykstra, at 9000 Zuni Road SE, Unit G-27, Albuquerque, NM, on a 2004 white Chevy Aveo.

established on Ruiz. Agents followed Ruiz to his residence located at 224 Atrisco Vista Boulevard, Trailer #528, Albuquerque, NM. As surveillance on Ruiz was terminated, agents observed the above-mentioned white Chevy Aveo heading eastbound on Central Avenue SW from Atrisco Vista Boulevard. Agents observed Montoya as the driver of the white Chevy Aveo. Surveillance was established on Montoya. Agents observed Montoya parked in front of the El Mesquite Market located at 100 98th Street NW, Albuquerque, NM. Agents observed Montoya exiting the passenger's side of a white Dodge truck, bearing NM license plate 275WCN,[5] carrying a black backpack on his shoulder. Agents observed Montoya walk towards the rear driver's side door of the white Chevy Aveo, open it, and place the backpack inside. Montoya then entered the driver's seat of the white Chevy Aveo and both vehicles departed from the parking lot.

18.     Based on the brief meeting between Montoya and the driver of the white Dodge truck, agents believe Montoya was sourcing the driver of the white Dodge truck with illegal drugs. Although agents were unable to identify the driver of the Aveo at the time, based on the later surveillance where Montoya was observed as the driver of the Aveo, agents also believe that Montoya was sourcing Ruiz with illegal drugs prior to Ruiz's meeting with the CS. In this instance, Montoya was utilizing a vehicle (the white Chevy Aveo) that agents have not previously seen him use before and is not registered to him. I know from my training and experience that it is common for drug traffickers to make varied use of multiple vehicles in an attempt to evade law enforcement detection.

---

[5] According to NM DMV, plate 275WCN is registered to Rosendo Garcia, at 924 Pacific Avenue SW, Albuquerque, NM, on a 2016 white Dodge Ram.

**June 2020 CS Controlled Buy**

19.     In June 2020, agents met with the CS at a predetermined location in order to conduct a controlled purchase of over 20 grams of heroin from Ruiz. There, agents searched the CS and his/her vehicle for contraband and none was located. The CS, under the direction of agents, placed a recorded phone call to Ruiz in order to arrange the purchase of heroin. Ruiz answered and during this phone conversation, Ruiz informed the CS that he (Ruiz) was waiting on "Ol' Boy"[6] and that he would not be back until later tonight.  Ruiz restated that he would not be able to sell the CS heroin until 5:00 p.m. - 5:30 p.m. that evening. The CS replied to Ruiz that he/she would attempt to purchase the heroin in the next couple of days.

20.     The following day, agents met with the CS at a predetermined location in order to conduct a controlled purchase of over 20 grams of heroin from Ruiz. There, agents searched the CS and his/her vehicle for contraband and none was located. The CS, under the direction of agents, placed a recorded phone call to Ruiz in order to arrange the purchase of heroin, however the call went unanswered. The CS then placed a recorded phone call to another phone number Ruiz utilizes. Ruiz answered and during this phone conversation the CS and Ruiz agreed to meet at a public location in the northwest part of Albuquerque, NM, for the purpose of conducting a heroin deal. Just before noon, agents established surveillance at the location where Ruiz agreed to meet the CS.  During this time, agents observed three males standing outside and agents identified two of the males as Ruiz and Montoya. Agents also observed a blue GMC Sierra truck,

---

[6] Through the course of this investigation, and in conjunction with reliable CS statements and surveillance, agents believe that when Ruiz refers to "Ol' Boy," Ruiz is referring to Eustacio Montoya. Agents also believe that Montoya is Ruiz's heroin source of supply and have observed Montoya meeting Ruiz prior to and after Ruiz selling heroin to the CS on three (4) occasions. As previously stated and per CS, Ruiz is Montoya's "right-hand man."

bearing NM license plate UNM32209,[7] parked curbside. Agents then observed Montoya enter the driver's seat of the blue GMC truck and depart from the area. Agents established surveillance on Montoya and followed Montoya to his residence located at, 6815 Toratolla Court NW, Albuquerque, NM.

21.     Approximately one (1) hour later, agents provided the CS with a recording device and U.S. currency. Agents then followed the CS to the meet location and observed the CS arrive and exit his/her vehicle, where he/she was met by Ruiz, who was outside. Agents then observed the CS and Ruiz enter the CS' vehicle. Moments later, agents observed the CS and Ruiz exit the CS vehicle and continue talking outside. Approximately one (1) minute later, agents observed the CS enter his/her vehicle and depart from the area. Agents then followed the CS back to a predetermined location and took custody of the heroin from the CS. Agents searched the CS and his/her vehicle and did not locate any contraband. The CS confirmed that the exchange was made with Ruiz. The purchased heroin was transported to the Albuquerque District Office, where it field-tested positive for heroin. The heroin was subsequently sent to a DEA laboratory for analysis and safekeeping.

### August 2020 CS/UC Controlled Buy

22.     In August 2020, agents met with the CS and UC at a predetermined location in order to conduct a controlled purchase of over 400 grams of heroin from Ruiz. There, agents searched the CS for contraband and none was located. The CS, under the direction of agents, placed a recorded phone call to Ruiz in order to arrange the purchase of heroin. During this phone conversation, Ruiz informed the CS that he (Ruiz) could meet at a public location in

---

[7] According to NM DMV, plate 32209UNM is registered to Eustacio and Valerie Ann Montoya at 6815 Toratolla Court NW, Albuquerque, NM. Agents have also seen Montoya utilize this vehicle to meet with Ruiz prior to the CS making controlled purchases of heroin from Ruiz.

northeast Albuquerque to conduct the heroin deal. Shortly after, the CS, under the direction of agents, placed a second recorded phone call to Ruiz to assure the heroin deal was going to take place. During this phone conversation, Ruiz informed the CS that he (Ruiz) would call his guy and call the CS back. Shortly after, the CS, under the direction of agents, placed a third recorded phone call to Ruiz. Ruiz answered and stated he was still waiting for "him" to call back. Further, Ruiz stated, "we should be good, I told him last night." Based on the phone conversations between the CS and Ruiz, agents believe Ruiz referring to "him" references Montoya as the source for the heroin.

23.     During the duration of time the recorded phone conversations between Ruiz and the CS were taking place, agents, utilizing cell phone location pings for the cellular phone assigned to **Montoya Phone 1,** found Montoya's blue GMC Sierra truck, bearing license plate 32209UNM, at a public location in northwest Albuquerque. Shortly after agents found Montoya's blue GMC truck, agents observed Montoya depart from the public location and arrive at his residence located at 6815 Toratolla Court NW, Albuquerque, NM. Agents observed Montoya exit the blue GMC truck and enter the residence through the garage. Shortly after, agents observed Montoya exit the residence, enter the driver's side of the blue GMC truck, and depart from the area. Agents followed Montoya to a residence located at 3216 Cypress Drive SW, Albuquerque, NM.[8]  Once Montoya arrived, agents were unable to determine if Montoya exited the blue GMC truck due to moving surveillance and a large tree in the front yard of the home. Shortly after Montoya's arrival, agents also observed a white Dodge Ram truck bearing license plate 275WCN arrive to the residence. This white Dodge Ram truck had been previously

---

[8] Based on the cell phone location pings for **Montoya Phone 1,** agents received a 201 meter ping from T-Mobile at approximately 12:35 p.m., which placed the ping in the area of 3216 Cypress Drive SW, until approximately 1:20 PM.

observed meeting with Montoya at the El Mesquite Market after a CS controlled purchase of heroin in January 2020.

24.     While surveillance observed Montoya at the Cypress Drive address, agents had also established surveillance at Ruiz's residence located at 224 Atrisco Vista Boulevard, Trailer #528, Albuquerque, NM. Agents observed Ruiz depart from the trailer in a gray Ford Ranger bearing NM license plate 224WPG.[9] Approximately ten minutes after Montoya's arrival, agents observed Ruiz arrive to 3216 Cypress Drive SW in the gray Ford Ranger. Agents observed a male wearing a black t-shirt exit the passenger side of the white Dodge truck, walk towards the passenger side of the blue GMC truck, briefly open the passenger side door, and then close it. The male then walked towards the passenger side of Ruiz's gray Ford Ranger. Moments later, agents observed the male wearing the black t-shirt walk from Ruiz's vehicle. Agents observed Ruiz depart from the residence and surveillance was established on Ruiz. Agents observed Ruiz, without making any stops, arrive at the public location in northeast Albuquerque to meet with the CS and UC for the controlled purchase of heroin.

25.     Although agents were unable to identify phone contact between Montoya and Ruiz leading up to, or during, their meeting at the Cypress Drive residence, the meeting between the two appeared coordinated. Based on my training, experience, and knowledge of the investigation, I believe that Montoya and Ruiz coordinated this meeting by using the same method that most people do – cellular telephone communication. Even though agents could not identify a phone call or text message between Montoya and Ruiz, it is possible that they used a social media application to communicate. I know that it is very common for cellular telephone

---

[9]  According to NM DMV, plate 224WPG is registered to PV Holding Corporation, at 3400 University Boulevard SE, Albuquerque, NM, on a 2020 Gray Ford Ranger. Agents know this is a rental vehicle being utilized by Arturo Ruiz.

users, including drug traffickers, to have social media applications installed on cellular phones and use those applications for communicating.

26.     Prior to Ruiz's arrival at the predetermined meet location, agents provided the CS and UC with a recording device and U.S. currency, then followed the CS and UC to the meet location. Upon Ruiz's arrival, agents observed the CS exit the passenger's side of the UC vehicle and enter the passenger's side of Ruiz's vehicle. Moments later, agents observed the CS exit Ruiz's vehicle and enter the passenger's side of the UC vehicle. Approximately one (1) minute later, agents observed the CS exit the UC vehicle again and enter the passenger's side of Ruiz's vehicle. Moments later, agents observed the CS exit Ruiz's vehicle and enter the UC vehicle. Agents then followed the CS and UC back to a predetermined location and took custody of the heroin from the CS and UC. Agents searched the CS and did not locate any contraband. The CS confirmed that the exchange was made with Ruiz. The purchased heroin was transported to the Albuquerque District Office, where it field-tested positive for heroin and weighed approximately 415 grams. The heroin was subsequently sent to a DEA laboratory for analysis and safekeeping.

27.     After the meet between Ruiz and the CS/UC, agents maintained surveillance on Ruiz. Agents observed Ruiz depart the parking lot where the meet occurred and without making any stops, agents followed Ruiz back to the residence located at 3216 Cypress Drive SW. Agents observed Montoya's blue GMC truck still at the residence. Upon Ruiz's arrival, agents observed Ruiz exit the driver's side of the gray Ford Ranger and enter the passenger's side of the blue GMC truck. Approximately twenty (20) minutes later, surveillance was terminated and no other activities were observed.

28.     Agents believe that Montoya meeting with Ruiz close in time to when Ruiz sells drugs to the CS and UC is indicative of Montoya acting as a source of supply for Ruiz. Ruiz's

statement that he has to wait for "Ol' Boy" or "him" before conducting a drug transaction indicates that Montoya is a key player in the drug distribution scheme. As previously mentioned, I know that drug traffickers make regular use of cellular phones to facilitate drug trafficking activities. As stated above, toll information from **Montoya Phone 1** shows that it is in contact with Ruiz. I believe that Montoya is making use of **Montoya Phone 1** to coordinate and facilitate his drug trafficking activities with Ruiz and others.

29.     Based on my training, experience, and knowledge of the investigation, I believe Montoya is an active poly-drug trafficker in the Albuquerque, NM area and is a source of supply for Ruiz. There is probable cause to believe that the location of **Montoya Phone 1** will continue to reveal evidence of drug trafficking in violation of 21 U.S.C. §§ 841 and 846. The location of **Montoya Phone 1** will continue to assist agents in identifying Montoya's co-conspirators, and the locations where Montoya receives, distributes, and stores illegal drugs and proceeds.

30.     In my training and experience, I have learned that T-MOBILE is a company that provide cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are

often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

31.     Based on my training and experience, I know that T-MOBILE can collect E-911 Phase II data about the location of **Montoya Phone 1**, including by initiating a signal to determine the location of **Montoya Phone 1** on T-MOBILE's network or with such other reference points as may be reasonably available.

32.     Based on my training and experience, I know that T-MOBILE can collect cell-site data about **Montoya Phone 1**. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-MOBILE typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

33.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

34.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable

cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of **Montoya Phone 1** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

35.     I further request that the Court direct T-MOBILE to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-MOBILE. I also request that the Court direct T-MOBILE to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-MOBILE's services, including by initiating a signal to determine the location of **Montoya Phone 1** on T-MOBILE's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

36.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate **Montoya Phone 1** outside of daytime hours.

37.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

38.     Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

39.     This affidavit has been approved by AUSA Peter J. Eicker.

Respectfully Submitted,

Gillian Polinko,
Special Agent
U.S. Drug Enforcement Administration

Sworn to before me by telephone on this
19th day of August, 2020,

STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

The cellular telephone currently assigned telephone number (505) 569-3966 ("**Montoya Phone 1**"), subscribed to Mikayla Montoya, at 915 Old Mill Drive NW, Albuquerque, NM, whose service provider is T-MOBILE, a wireless telephone service provider with headquarters at 4 Sylvan Way, Parsippany, New Jersey.

Records and information associated with **Montoya Phone 1** that is within the possession, custody, or control of T-MOBILE, including information about the location of the cellular telephone, even if it is subsequently assigned a different call number.

2

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be Disclosed by the Provider**

All information about the location of **Montoya Phone 1** described in Attachment A for a period of 30 days, during all times of day and night.  "Information about the location of **Montoya Phone 1** includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-MOBILE, T-MOBILE is required to disclose the Location Information to the government.  In addition, T-MOBILE must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-MOBILE services. The government shall compensate T-MOBILE for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

3

## II.      Information to Be Seized by the Government

All information described above in Section I that constitutes evidence and instrumentalities of violations of 21 U.S.C. §§ 841 and 846 involving Eustacio Montoya and yet unidentified co-conspirators.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

4